IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Thyra Calhoun, James Calhoun, Rosia Calhoun,
Laquandria Roberts,

               Plaintiffs,

v.

City of Chicago, Chicago Police officers G. Perez, Star No. 19697, A: Camarillo, Star No. 13318, J. McNichols, Star No. 12314; N. Lesch Star No. 13061, B. Leahy, Star No. 13624, M.Calhoun, Star No. 19196, D. Claeson, Star No. 2054, J. Zapata, Star No. 3747, and J. Woods, Star No. 8990,

               Defendants.

No. 09-cv-02200

Judge Samuel Der-Jeghiayan
Magistrate Morton Denlow

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, Officers Perez, Camarillo, McNichols, Lesch, Leahy, Calhoun, Claeson, Zapata, and Woods ("Defendant Officers") and the City of Chicago ("City") (Defendant Officers and City collectively referred to as "Defendants"), by their attorneys, the law firm of Johnson & Bell, Ltd., and pursuant to F.R.Civ.P. 56(b) and LR 56.1 of the Rules of the United States District Court-Northern District, respectfully submit their Memorandum of Law in Support of Motion for Summary Judgment. Defendants respectfully incorporate herein by reference their Motion for Summary Judgment and their Statement of Undisputed Facts filed concurrently herein.

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a *genuine* issue of *material* fact for

the case to survive. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

Although in analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the nonmoving party, it does not extend to the drawing of "[i]nferences that are supported by only speculation or conjecture." *Fischer v. Avanade, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008) (citation omitted); *Argyropoulos v. City of Alton,* 539 F.3d 724, 732 (7th Cir. 2008). The nonmoving party "must do more than raise some metaphysical doubt as to the material facts; [it] must come forward with specific facts showing that there is a genuine issue for trial. *Keri v. Bd. of Trs. of Purdue Univ.,* 458 F.3d 620, 628 (7th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The court will conclude that a genuine issue of material fact exists, precluding summary judgment, "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Sides v. City of Champaign,* 496 F.3d 820, 826 (7th Cir. 2007) (citation omitted). If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, summary judgment may be granted. *Anderson,* 477 U.S. at 249-50. "Plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment." *Weeks v. Samsung Heavy Indus. Co.,* 126 F. 3rd 926, 939 (7th Cir. 1997). Further, Plaintiff's own subjective belief does not create a genuine issue of material fact. *Chiaramonte v. Fasion Bed Group, Inc.,* 129 F.3d 391, 401 (7th Cir. 1997).

## II. ARGUMENT

The present action arises out of the Defendant Officers' participation in the execution of a search warrant of a single family home located at 3550 West Cermak in Chicago, Illinois, ("the residence") sometime after 9:00 p.m. on April 14, 2008. (Cmplt., Ex. A, ¶¶18-23) Thyra Calhoun, James Calhoun, Rosia Calhoun, and Laquandria Roberts ("Plaintiffs")[1] brought this action for damages under *42 U.S.C. §1983. (Id.* at ¶1) Plaintiffs' first two claims are based upon

---

[1] Donald Benson was voluntarily dismissed with prejudice as plaintiff from this matter on 6/1/10. Thus, only Counts I, II and III remain pending against the Defendants.

2

the search conducted by Defendant Officers at the residence. Plaintiffs claim Defendant Officers violated Plaintiffs' rights in the following manner: (1) "seizures of Plaintiffs was without any legal cause" (*Id.* Count I at ¶33); (2) "[f]orcibly entering the Plaintiffs' residence without first knocking and announcing their office"; (3) "[c]ausing excessive and unnecessary property damage to Plaintiffs' residence"; and (4) removing without authorization Plaintiffs' personal property (*Id.* Count II at ¶36). Plaintiffs last claim that the search of the residence was executed pursuant to a constitutionally defective warrant, which amounted to a violation of Plaintiffs' constitutional rights to be free from unreasonable searches and seizures (*Id.* Count III at ¶¶39 - 42).[2]

### A. Count III – Unreasonable Procurement Of A Search Warrant

It makes sense to first address Count III of Plaintiffs' complaint dealing with a threshold issue of whether the search warrant procured by Defendant Officers Perez and Camarillo was supported by probable cause. Although Plaintiffs filed this claim against all Defendant Officers, only Officers Perez and Camarillo were personally involved in the procurement of the search warrant.[3] As this claim involves police conduct, the principles of qualified immunity are applicable.

The doctrine of qualified immunity shields police officers from liability, protecting them from "undue interference with their duties and from potentially disabling threats of liability," *Tangwall v. Stuckey*, 135 F.3d 510, 514 (7th Cir. 1998), and courts should resolve qualified immunity issues on summary judgment whenever possible. *Auriemma v. Rice*, 910 F.2d 1449, 1452 (7th Cir. 1990). Officers are immune from suit so long as their actions do no violate a

---

[2] Both the relevant facts alleged in Plaintiffs' complaint and established through discovery are regarded as true only for purposes of this motion. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

[3] For an individual to be liable under *Section* 1983, he must have caused or participated in the alleged constitutional violation. *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005); *Swanigan v. Trotter*, 645 F. Supp. 2d 656, 673 (7th Cir. 2009). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

3

clearly established federal statutory or constitutional right of which a reasonable person would have known. *Wollin v. Gondert,* 192 F.3d 616, 625 (7th Cir. 1999). If reasonably competent officials could have disagreed as to the lawfulness of the alleged wrongful conduct, the officers are entitled to qualified immunity. *See Malley v. Briggs,* 475 U.S. 335, 341 (1986). Plaintiffs bear the burden of setting forth a clearly established right sufficient to overcome the shield of immunity. *Kernats v. O'Sullivan,* 35 F. 3rd 1171, 1176 (7th Cir. 1994).

In *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 2684 (1978), the Supreme Court held that affidavits filed in support of a warrant are presumed to be valid. The Court ruled that in light of this presumption, plaintiff must make a "substantial preliminary showing" that a factual statement made in an affidavit supporting a warrant is false; that the false statement was made either knowingly, intentionally, or with reckless disregard for the truth; and that the remainder of the affidavit fails to establish the existence of probable cause. *Id.* at 155-56. *See also United States v. Amerson,* 185 F.3d 676, 688 (7th Cir. 1999). Summary judgment is proper when the plaintiff fails to meet this burden. *King v. Avila,* 760 F. Supp. 681, 684 (N. D. Ill. 1989).

Moreover, a sworn complaint supporting a warrant establishes probable cause when it "sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime." *United States v. Jones,* 208 F.3d 603, 608 (7th Cir. 2000). When evaluating a challenge that a complaint filed in support of a search warrant did not establish probable cause, that determination is based upon "those facts known to the police when they applied for the warrant." *Rusell v. Harms,* 397 F.3d 458, 464 (7th Cir. 2005). Furthermore, when an affidavit relies on an informant's tip, the probable cause determination requires an examination of the totality of the circumstances, including basis of his knowledge. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983).

Where the credibility of an informant is at issue, then, the relevant considerations are: (1)

4

the informant's personal observations, (2) the degree of detail given, (3) independent police corroboration of the informant's information, and (4) whether the informant testified at the probable cause hearing. *Jones,* 208 F.3d at 608 (citing *U.S. v. Singleton,* 125 F.3d 1097, 1103-04 (7th Cir. 1997)). As long as there existed a "substantial basis for ... concluding that a search would uncover evidence of wrongdoing," the issuance of a warrant will be upheld. *Gates,* 462 U.S. at 238-39, 103 S. Ct. 2317, 2332.

Here, Plaintiffs first question J. Doe's reliability only because "he had not previously provided reliable information." (Cmplt, Ex. A, ¶39(a)) However, J. Doe's information to Officer Perez was predicated on his first-hand and detailed account of his narcotics transactions with Trexler Calhoun at the subject residence on the same day when the warrant was issued. (Perez Decl., Ex. D, ¶5; Camarillo Decl., Ex. E, ¶6; Cmplt. for Search Warrant, Ex.2 to Ex. D) Specifically, on April 14, 2008, Officer Perez and his partner, Officer Camarillo, both Gang Enforcement Officers assigned to Organized Crime Division of the Chicago Police Department, received information from a private citizen J. Doe that cocaine was being sold at the residence by a man named Trexler Calhoun. (Perez Decl., Ex. D, ¶4; Camarillo Decl., Ex. E, ¶5; Cmplt. for Search Warrant, Ex.2 to Ex. D) Complaint for Search Warrant set forth the substance of a conversation that Officer Perez had with J. Doe on April 14, 2008. According to the sworn complaint, J. Doe:

> ...for approximately 6 months has been buying crack cocaine from a man named Trexler Calhoun, who conducts his narcotics operation from the single family house located at 3550 W. Cermak, Chicago, Illinois. ... J. Doe stated that on 14 April 2008, J. Doe was in the company of Trexler Calhoun in the single family house at 3550 W. Cermak, then Trexler Calhoun, gave J. Doe 2 small zip lock baggies, each containing crack cocaine. ... J. Doe stated that J. Doe is a frequent customer of Trexler Calhoun and always pays Trexler Calhoun $10.00 U.S.C. for 1 small baggie of crack cocaine.

Cmplt. for Search Warrant, Ex. 2 to Ex. D.

The sworn complaint also recounted that on April 14, 2008, Officer Perez and J. Doe relocated to the residence and J. Doe identified the single family house. (Perez Decl., Ex. D, ¶6;

5

Camarillo Decl., Ex. E, ¶7; Cmplt. for Search Warrant, Ex.2 to Ex. D) Upon returning to the Eleventh District police station, Officer Perez checked Trexler Calhoun's criminal history – *inter alia*, a convicted drug felon - with a listed residence address of 3550 W. Cermak in Chicago. (Cmplt. for Search Warrant, Ex.2 to Ex. D; Trexler's Criminal History, Ex. 1 to Ex. D) J. Doe also confirmed Trexler's identity by looking at the picture that Perez pulled up from the CPD Data Warehouse and identified the residence from the picture pulled from the Cook County Assessors. (Perez Decl., Ex. D, ¶7; Cmplt. for Search Warrant, Ex.2 to Ex. D)

Thus, J. Doe detailed the location and the buy of crack cocaine from Trexler Calhoun, and described Trexler Calhoun's physical appearance, all of which was included in the sworn complaint submitted to Judge O'Malley. J. Doe also described the exterior of the single family house at 3550 W. Cermak, which Perez independently verified. Perez also checked Trexler Calhoun's criminal history, which had the subject 3550 W. Cermak address listed as his residence and showed the picture of Trexler Calhoun to J. Doe, who positively identified him. Finally, subsequent to Perez's investigation at the station and in the field, J. Doe accompanied Perez and Camarillo to give testimony before the judge issuing the warrant, which further strengthens the foundation necessary for a probable cause finding. (Perez Decl., Ex. D, ¶12; Camarillo Decl., Ex. E, ¶11)

Based on the complaint and J. Doe's sworn testimony, Judge O'Malley of the Circuit Court of Cook County found that stated facts were sufficient to show probable cause. Accordingly, a search warrant was issued for the person of Trexler Calhoun and the premises located 3550 W. Cermak in Chicago. The warrant provided for the seizure of cocaine, proof of residency, any paraphernalia used in the weighing, adding or mixing of illegal drugs, any records detailing drug transactions and United States currency. (Perez Decl., Ex. D, ¶¶12-14; Camarillo Decl., Ex. E, ¶11-12; Search Warrant, Ex.3 to Ex. D)

Thus, at the very least, three of the four considerations articulated by the Seventh Circuit

6

for determining an informant's credibility were satisfied in the instant case: personal knowledge, degree of detail, and J. Doe's testimony before the issuing judge. When Defendants relied on the search warrant issued to them by a neutral judge, they certainly did so not unreasonably. *See Wollin v. Gondert,* 192 F.3d 616 (7th Cir. 1999). Undoubtedly, based on the authorities and facts cited above, Defendant Officers Perez and Camarillo's reliance on J. Doe's representations was reasonable and they are entitled to qualified immunity.

Plaintiffs next maintain that the search warrant was procured fraudulently because Defendant Officers did not advise "the Assistant State's Attorney approving the warrant application and the judge issuing the warrant of all available relevant information related to Plaintiffs' residence, Trexler Calhoun, and Plaintiffs. ... all information provided by any alleged confidential informant and corroboration of that information or lack thereof." (Cmplt., Ex.A, ¶39(b-e)

The law is clear: officers are subject to suit where they have intentionally or recklessly omitted material information from an affidavit. *Golino v. City of New Haven,* 950 F.2d 864, 871 (7th Cir. 1991). Recklessness "may be inferred where the omitted information was critical to the probable cause determination." *Id.* Moreover, a warrant does not become invalid because the information upon which it is based is later deemed to be inaccurate. *See Gramenos v. Jewel Co. Inc.,* 797 F.2d 432, 439 (7th Cir. 1986) ("Probable cause does not depend on the witness turning out to have been right.").

Besides mere conclusory statements, the Plaintiffs never explained specifically which "available relevant information" was not supplied to the Assistant State's Attorney and/or the issuing judge by the Defendants. Plaintiffs absolutely failed to make any "substantial preliminary showing" that the factual statements made in Perez's complaint supporting the search warrant were false or that he omitted material information.[4] Thus, Plaintiffs' conclusory allegations that

---

[4] Even if the issuing judge had been informed that Trexler Calhoun was not living at the residence, such awareness

7

Defendant Officers used false information in obtaining the search warrant for the residence are completely devoid of detail, and left to Defendants' and this Court's imagination.

In *Harden v. Peck*, 686 F. Supp. 1254, 1259 (N. D. Ill. 1988), considering an affidavit bearing similar indicia of reliability, Judge Zagel concluded that when the informant told the officer that he had just gone to the target's home that same day and purchased $100 worth of cocaine from the target, these factual allegations in the officer's affidavit were clearly sufficient to establish probable cause to believe that the target had sold and was still in possession of cocaine. The *Harden* opinion then went on to state that "whatever else one might say about [the officer's] Affidavit, it certainly cannot be maintained that it was so lacking in indicia of probable cause as to render [the officer's] belief in its existence unreasonable." *Harden*, 686 F. Supp. at 1259. There facts in this case are nearly identical to the *Harden* case, and Judge Zagel's reasoning wholly applies in the instant case.

Therefore, there is no genuine issue of material fact that Plaintiffs in this case have failed to make a substantial preliminary showing of specific conduct on Officers Perez and Camarillo's part in procuring the search warrant for the residence that would amount to Plaintiffs' constitutional violation. Since only Defendant Officers Perez and Camarillo were personally involved in the procurement of the search warrant, and they are entitled to judgment as a matter of law, summary judgment on Count III is proper in favor of all Defendant Officers.

B. *Fourth Amendment* **Warrant Clause Claim for Unlawful Seizure**

Counts I and II of the complaint allege deprivation of the Plaintiffs' *Fourth Amendment* rights by actions taken under color of the search warrant obtained by Defendant Officer Perez

---

would not have taken away from a finding of probable cause. More importantly, it is permissible to issue a search warrant for the residence as long as there was "probable cause to believe that fruits, instrumentalities, or evidence of a crime" would be discovered there. *Zurcher v. Stanford Daily*, 436 U.S. 547, 552, 98 S. Ct. 1970, 1975 (1978). The alleged crime did not necessarily have to be connected to the Plaintiffs. *Wyoming v. Houghton*, 526 U.S. 295, 302, 119 S. Ct. 1297, 1301 (1999) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.").

8

and Camarillo. As this claim also involves police conduct, the principles of qualified immunity outlined above are also applicable.

As was clearly articulated by the Supreme Court in *Michigan v. Summers,* 452 U.S. 692, 705, 101 S. Ct. 2587 (1981), a warrant to search for contraband founded upon probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. The Supreme Court subsequently also held that "[i]nherent in *Summers'* authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention. *Muehler v. Mena,* 544 U.S. 93, 125 S. Ct. 1465, 1470 (2005). Therefore, handcuffing the occupants of a residence while a search warrant is being executed does not violate the occupant's Fourth Amendment rights. *Id.*

Here, present in the residence at the time of the search were the following Plaintiffs: James Calhoun, James' daughter Thyra Calhoun – convicted drug offender, and Thyra's daughter Laquandria Roberts. (Thyra C. Dep, Ex. M, pp. 12-16; James C. Dep., Ex. C, pp. 22, 29) The last Plaintiff Rosia Calhoun was away visiting her brother in Eudora, Arkansas at the time of the search. (Rosia C. Dep, Ex. N, pp. 15-16) Also present at the time of the search were Thyra's two sons Donald Benson and Anthony Calhoun, Henry Curry, Boo, a/k/a Jackee Taylor, Larry Pitts, and Cecil Tousant. (Thyra C. Dep, Ex. M, pp. 12-16; James C. Dep., Ex. C, pp. 22, 29) All of the individuals were detained and seated in the living room area; all were handcuffed except Thyra Calhoun and her young son Anthony. (Thyra C. Dep, Ex. M, p. 14) Prior to leaving the residence, Sgt. Claeson left Plaintiff James Calhoun with a copy of the search warrant. (Claeson Decl., Ex. F, ¶9) The search of the residence lasted about one hour. (Claeson Decl., Ex. F, ¶12 ; Lesch Decl., Ex. I, ¶6)

Thus, Plaintiff Rosia Calhoun has no standing to assert this claim against Defendant Officers as she was not present at the time of the execution of the search warrant; she was never detained. All of the remaining Plaintiffs' detention in one centralized area by seating them on the

9

couches for the duration of the search, whether handcuffed or not, was clearly reasonable to protect the officers' safety and clearly not in violation of Plaintiffs Fourth Amendment rights.

### C. *Fourth Amendment* Warrant Clause Claim for the Reasonableness of the Search

#### i. Knock and announce

On April 14, 2008, sometime after 9:00 p.m., Defendant Officers, all in plain clothes with black bullet proof vests displaying their police badges on top, proceeded to execute the search warrant at the residence. (Perez Decl., Ex. D, ¶16; Claeson Decl., Ex. F, ¶7; James C. Dep, Ex. C, p. 26) Defendant Officer Woods knocked on the front door and announced his office and purpose: "Police, search warrant." (Woods Decl., Ex. G, ¶5) There was no forced entry into the residence, as Officer Woods simply pushed the entrance door open, which was unlocked. (Perez Decl., Ex. D, ¶17; Camarillo Decl., Ex. E, ¶14; Claeson Decl., Ex. F, ¶8; Leahy Decl., Ex. H, ¶5; James C. Dep, Ex. C, pp. 24-25) After entering the residence, some police officers went up the main staircase right in front of the entrance door to the second floor, while other police officers proceeded to secure the first floor. (Claeson Decl., Ex. F, ¶8)

Although Plaintiffs dispute whether police knocked prior to entering the residence, knocking on the door and announcing themselves is ordinarily required by police as a prerequisite to entry by force. *Powers v. Sliozis,* 1991 U.S. Dist. LEXIS 17602 (N. D. Ill. 1991), citing *Miller v. United States,* 357 U.S. 301 (1958) (emphasis added). Here, there is no dispute that police announced their office and did not force their entry into the residence.

#### ii. Property damage

Next, Plaintiffs assert that the manner in which the search warrant was executed constituted an unreasonable search and seizure and resulted in substantial damage of Plaintiffs' property. It is true that Defendant Officers did a systematic search of the residence by emptying contents of the dresser drawers either on the beds and/or the floor, and looking inside various other places. (Claeson Decl., Ex. F, ¶11) Officers did not pick up the content of the drawers

10

when they finished searching them. After completing the search, the following items were seized and inventoried back at the Eleventh District police station:

(1) Seven pages of suspect narcotics ledgers;
(2) One clear plastic bag containing 19 zip lock baggies of cannabis;
(3) One clear plastic bag containing 18 small zip lock baggies of cannabis;
(4) Three clear plastic bags containing cannabis;
(5) $12,952.00 in United States currency [5];
(6) One 9mm semi-automatic hand gun loaded with 7 live bullets in a holster;
(7) One box containing 32 of 9mm rounds;
(8) One 28 inch barrel pump shotgun loaded with 4 live shotgun shells;
(9) One box containing 20 shotgun shells;
(10) Two pieces of mail addressed to Trexler Calhoun showing proof of residence;
(11) Donald Benson's Illinois drivers license;
(12) Donald Benson's cell phone bill showing proof of residence;

(Property Inventory Record Numbers # #11274008, #11274331, #11274333, #11274335, #112474346, #11274347, # 11274352, #111274359, #11274363, #11274381, #11274383, and #11274385 are attached as Group Exhibit 5 to Exhibit D).

Plaintiffs claim that during the execution of the search warrant Defendant Officers damaged one bedroom door and two dressers, three perfume bottles, poured some detergent over clothes, destroyed a fez and a 32nd degree crown. (Thyra C. Dep., Ex. M, pp. 4-9; James C. Dep., Ex. C, pp. 45-46, 69; Laquandria R. Dep., Ex. R, pp. 10-11)

As a general rule, police acting under color of a facially valid warrant are immune from damages for violations of civil rights. *King*, 760 F. Supp. at 685, citing *Bezdek v. City of Elmhurst*, 70 F.R.D. 636 (N. D. Ill. 1976). Furthermore, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by a warrant. *Dalia v. United States*, 441 U.S. 238, 258, 99 S. Ct. 1682 (1979). Although, from the moment of entry, to the point of departure, the manner in which a police officer executes a warrant is subject to judicial review as to its reasonableness, this standard

---

[5] K-9 unit was also notified and arrived in the Eleventh District, where K-9 "Zeus" made a positive alert to the presence of the odor of narcotics on the United States currency recovered at the residence. A true and correct copy of the Supplemental Report is attached as **Exhibit U.**
On November 30, 2009, the Circuit Court of Cook County issued an order releasing $12,952.00 to Donald Benson. See Group Exhibit T.

11

recognizes that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia,* 441 U.S. at 258.

Thus, this Court must decide whether the Defendant Officers' search of the residence was reasonable, or in the alternative, whether they are entitled to qualified immunity for the alleged damage to personal property arising from the claim that the search was conducted in an unreasonable manner. First, Plaintiffs did not adequately bring forth any evidence refuting Defendants' assertion that there was no property damage caused by their search of the residence. Here, Defendant Officers have submitted affidavits stating there was no damage caused to Plaintiffs' property during their search of the residence. (Perez Decl., Ex. D, ¶20; Camarillo Decl., Ex. E, ¶17; Claeson Decl., Ex. F, ¶11&14; Woods Decl., Ex. G, ¶7; Leahy Decl., Ex. H, ¶7; Lesch Decl., Ex. I, ¶8; Calhoun Decl., Ex. J, ¶9; McNichols Decl., Ex. K, ¶7; Zapata Decl., Ex. L, ¶6) While this is Defendants' own testimony, Plaintiffs have not introduced <u>any</u> evidence whatsoever to support their conclusory allegations of property damage. In fact, Plaintiffs do not claim to have actually seen any of the nine officers who participated in the search damage any of the items. Nor have Plaintiffs identified any witness to the alleged property damage. Plaintiff Rosia Calhoun was not even at the residence during the search. Although James Calhoun and Thyra Calhoun allege *de minimis* damage to the doors, dressers and articles of clothing, they failed to produce any invoices to show repair/replacement costs. This case cannot stand solely on Plaintiffs insubstantial and unsupported allegations. *Weeks,* 126 F.3d at 939 ("Plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment.").

Even taking Plaintiffs allegations as true, this Court should find that Defendant Officers' conduct was reasonable and therefore shielded by qualified immunity. In *Washington v. Godinez,* 1996 U.S. Dist. LEXIS 15373 (N. D. Ill. 1996), police conducted a search of the plaintiff's home and personal belongings. They removed ceiling tiles, tore insulation out of the ceiling, removed and destroyed frozen food from the freezer, and physically handled food which was cooking on

the stove. Although damage was caused to these personal belongings and to the premises itself, the court concluded that because drugs are often hidden in small containers or out of reach areas, it was not unreasonable to search in these places when executing the warrant. *Washington*, 1996 U.S. Dist. LEXIS 15373, * 5. The *Washington* court explained that because it is recognized that property damage will sometimes occur when executing a warrant, the resulting damage to the property searched was not unreasonable. *Id.* at *5 - *6.

*Bates v. Ft. Wayne*, 597 F. Supp. 711 (N. D. Ind. 1983) is another example where the court found that the defendant officers executed the warrant in a manner which was not unreasonable. The court based their findings on the fact that they found plaintiffs' allegations that the defendants "tore up their residential area and their belongings" and committed other unreasonable actions to be false. *Bates*, 597 F. Supp. at 722. The *Bates* case, like this one, involved a warrant for the search of drugs. The court noted that where "drugs are involved, they can be hidden anywhere, in small places and in small containers," and, therefore, "the officers disturbed only what was necessary in their search for contraband." *Id. See also Ginter v. Stallcup*, 869 F.2d 384 (8th Cir. 1989) (the court granted summary judgment in favor of the officers on the basis of qualified immunity where the officers set fire to a house harboring a fugitive, which led to the destruction of the house.); *Williams v. Alford*, 647 F. Supp. 1386 (M.D. Ala. 1986) *aff'd without opinion*, 829 F.2d 1130 (11th Cr. 1987) (the court held that police officers did not act unreasonably when they punched holes into walls, damaged a stereo, and left an apartment in disarray while executing a search warrant for narcotics); *U.S. v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991) (the court held that the government's use of a jackhammer to destroy a concrete slab was not an unreasonable search).[6]

---

[6] Courts recognize that the nature of the narcotics business often requires police to use exhaustive search methods in order to detect narcotics hidden in the premises. The court in *United States v. Davis*, 617 F.2d 677, 696 (D.C. Cir. 1979) put it as follows: "No search can be pleasant for the homeowner. It undeniably represents an intrusion into his privacy, but the intrusion is one that society is led to accept. ... the proper execution of a warrant demands a thorough search of the premises. Even if conducted with due care, for preserving the homeowner's possessions, any complete examination necessarily carries with it some risk of damage. Narcotics in particular may be hidden in very

13

In the instant case, even accepting Plaintiffs' *de minimis* claims of property damage, it is clear that no extensive damage was caused, and if any was done, it was a necessary result of the search. Given the fact that Defendant Officers were searching for drugs and drugs paraphernalia, the search was certainly reasonable and they are entitled to qualified immunity. In sum, Plaintiffs have failed to make a substantial showing that the Defendant Officers' conduct in making the search amounted to a constitutional violation. The actions alleged by Plaintiffs were well within the scope of reasonableness and Defendant Officers are entitled to qualified immunity from the claims asserted against them.

### iii. Stolen Money and Personal Items

Plaintiffs' unreasonable search claim also concerns allegations of theft of personal items and money. Plaintiff Thyra Calhoun claims that Defendant Officers stole $62 in cash (Thyra C. Dep, Ex. M, p. 9); Plaintiff Rosia Calhoun claims that a wallet containing $500 in cash and a diamond necklace were stolen (Rosia C. Dep., Ex. N, pp. 28-31); and Plaintiff James Calhoun claims that a universal watch, a cross and 4 old coins were stolen. (James C. Dep, Ex. C, p. 61)

Defendant Officers vehemently deny taking any money or other personal items identified by Plaintiffs from the residence, except for the inventoried items. (Perez Decl., Ex. D, ¶21; Camarillo Decl., Ex. E, ¶18; Claeson Decl., Ex. F, ¶15; Woods Decl., Ex. G, ¶8; Leahy Decl., Ex. H, ¶8; Lesch Decl., Ex. I, ¶9; Calhoun Decl., Ex. J, ¶10; McNichols Decl., Ex. K, ¶8; Zapata Decl., Ex. L, ¶7) Further, Plaintiffs have not shown who among the officers participating in the execution of the search warrant[7] allegedly took the personal items or the money claimed to be stolen. (Benson Dep, Ex. P, p. 132) In fact, Plaintiffs claims of a stolen watch, cross, coins, diamond necklace and $562.00 in cash are completely unsupported. Plaintiffs offer no theory, much less any credible facts sufficient to support an inference of theft. Indeed, on May 8, 2008,

---

small places, so an effective search in this case would require a painstaking examination of most of the property in the [owner's] home. ..."*Davis,* 617 F.2d at 696.
[7] At least another nine officers also participated in the execution of the search warrant.

14

less than a month after the subject search, Plaintiff Thyra Calhoun lodged a sworn complaint with the Independent Police Review Authority (IPRA) claiming that the officers "removed and inventoried only $12,000.00 USC but failed to inventory $162.00 USC." (FCRL 000284). Upon completion of the investigation, IPRA investigator found that "amount of recovered USC [$12,952.00] exceeded the amount the complainant alleged to have had. Based on this evidence, the undersigned believes the complainant's allegation to be unsubstantiated." (Thyra Calhon's IPRA Complaint, FCRL 000284-292, Ex. S) Even if one takes the total amount claimed to be stolen - $562.00- it is still more than the sum that was recovered, inventoried and eventually returned to Donald Benson, who dismissed this suit. (Court Order and a Check equal to $12,952.00 payable to Donald Benson, Group Ex. T)

Even assuming, arguendo, that personal items and money were taken, in the words of Judge Posner "[t]hat is not good enough to fend off summary judgment." *Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992). In *Hessel*, summary judgment was granted to fourteen officers when the plaintiffs admitted that they could not identify which of the officers stole various items from the plaintiffs' home. *Id.* As Judge Posner explained, the principle of "collective punishment as the sole possible basis of liability ... is not [] a part of our law." *Id.* He further stated that "[p]roximity to a wrongdoer does not authorize punishment." *Id.* Certainly, those officers who participated in the search but did not steal any of the Plaintiffs' property are innocent. To rephrase Judge Posner, there is no more reason to fix liability on these nine police officers than on the entire population of Chicago, Illinois, the site of the residence where the search warrant was executed. *Id., See also Molina v. Cooper*, 325 F.3d 963, 973-74 (7th Cir. 2003).

Since Plaintiffs can point to no Defendant Officer specifically and accuse him/her of taking their personal items or money, the *Hessel* decision is therefore fatal to the Plaintiffs' claim and the Court cannot allow the Plaintiffs rely solely on their own subjective beliefs.

Furthermore, if this Court agrees with Defendants, and finds no substantive constitutional

15

rights were violated in this case, then Plaintiffs' remaining procedural deprivation of property claims should be dismissed. Postdeprivation remedies are relevant in the § 1983 context only to procedural constitutional violations. *Schertz v. Waupaca County,* 683 F. Supp. 1551, 1576 (W. D. Wis. 1988) (citing *Hudson v. Palmer*, 468 U.S. 571, 533, 104 S. Ct. 3194, 3203 (1984)). Additionally, an alternative remedy is available to Plaintiffs under the state common law tort of conversion. *See Bullock v. Dioguardi,* 847 F. Supp. 553, 562 (N. D. Ill. 1993). In light of the adequate postdeprivation remedies provided by the state courts, Defendants cannot be subject to § 1983 liability for depriving Plaintiffs of property without due process. *Accord Creco v. Guss,* 775 F.2d 161, 169 (7th Cir. 1985). Since it is clear that Plaintiffs' substantive constitutional rights were not violated by the Defendant Officers during the execution of the search warrant, their deprivation of personal property claims therefore should also be dismissed.

Based on the above discussion of the facts and well-established case authorities, it is clear that Defendant Officers are entitled to summary judgment on Counts I and II of Plaintiffs' complaint.

WHEREFORE, Defendant Officers G. Perez, A. Camarillo, J. McNichols, N. Lesch, B. Leahy, M. Calhoun, D. Claeson, J. Zapata, and J. Woods and the City of Chicago, respectfully move for entry of an order of summary judgment in their favor and against plaintiffs, Thyra Calhoun, James Calhoun, Rosia Calhoun, and Laquandria Roberts, on Count I, Count II and Count III of the complaint.

    Respectfully submitted,
    JOHNSON & BELL, LTD.

    By: __/s/ Alexandria L. Bell__
    One of the Attorneys for Defendant Officers and the City of Chicago

Richard B. Levy, ARDC# 3127363
Alexandria L. Bell, ARDC# 6294858
Johnson & Bell, Ltd.
33 West Monroe St., Suite 2700
Chicago, IL 60603
(tel:) (312) 372-0770

## CERTIFICATE OF SERVICE

  The undersigned, hereby certifies that on this 30th day of June, 2010 she caused to be served true and correct copies of this **Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment** by causing copies of the same to be served to the following by operation of the CM/ECF System of the U.S. District Court for the Northern District of Illinois:

Garrett Browne
Ed Fox & Associates
300 W. Adams Street, Suite 330
Chicago, IL 60606

           By: /s/ Alexandria L. Bell
              One of the Attorneys for Defendants

Dated: June 30, 2010