IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THYRA CALHOUN, et al.,              )
                                     )
            Plaintiffs,              )
                                     )
      v.                             )      No. 09 C 2200
                                     )
CITY OF CHICAGO, et al.,             )
                                     )
            Defendants.              )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment.

For the reasons stated below, we grant in part and deny in part the motion for

summary judgment.

## BACKGROUND

The individual Defendants (Defendant Officers) are allegedly police officers

working for Defendant City of Chicago (City). On April 14, 2008, Plaintiffs were

allegedly at a residence in Chicago, Illinois (Residence). Defendant Officers

allegedly entered the Residence and detained Plaintiffs while the officers searched

the Residence. Plaintiffs contend that the entry into the Residence and search of the

residence was without their consent. Defendant Officers also allegedly arrested Plaintiff Donald Benson (Benson) without legal cause and allegedly caused false criminal charges to be brought against Benson. Defendant Officers also allegedly damaged property and stole property during the search of the Residence. Plaintiffs also contend that Defendant Officers unreasonably procured a search warrant (Search Warrant) for the Residence.

Plaintiffs include in their complaint unreasonable seizure claims brought pursuant to 42 U.S.C. § 1983 (Section 1983) (Count I), Section 1983 unreasonable search claims (Count II), Section 1983 unreasonable procurement of a search warrant claims (Count III), a state law malicious prosecution claim brought solely by Benson (Count IV), and a state law false imprisonment claim brought solely by Benson (Count V). On June 1, 2010, Benson voluntarily dismissed all claims brought by him. Defendants move for summary judgment on the remaining claims in this action in Counts I-III.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

2

Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in

favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Unreasonable Procurement of Search Warrant Claims (Count III)

Defendants move for summary judgment on the unreasonable procurement of search warrant claims. Defendants first contend that the procurement of search warrant claims cannot succeed against Defendants other than Defendant G. Perez (Perez) and Defendant A. Camarillo (Camarillo), since only Perez and Camarillo were personally involved in the procurement of the Search Warrant. Defendants also contend that the claims relating to Perez and Camarillo cannot succeed because the officers had probable cause and have qualified immunity.

#### A. Personal Involvement in Alleged Conduct

Defendants contend that Defendant Officers other than Perez and Camarillo were not personally involved in the procurement of the search warrant and thus cannot be held liable under Section 1983 in regard to such procurement. In order to hold an individual liable under Section 1983, a plaintiff must establish the

4

individual's "'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci,* 597 F.3d 824, 833 (7th Cir. 2010)(quoting *Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003)). Plaintiffs have not pointed to evidence that shows that Defendant Officers other than Perez and Camarillo were personally involved in the procurement of the search warrant. Plaintiffs also apparently concede this point admitting that Perez and Camarillo "were the officers who procured" the Search Warrant, and that "defendants Perez and Camarillo are liable to [P]laintiffs for unreasonable procurement of the search warrant." (Ans. 4, 13). Thus, since there is no evidence to show the personal involvement of Defendant Officers other than Perez and Camarillo in the procurement of the Search Warrant, Plaintiffs cannot prevail on the claims in Count III brought against Defendants J. McNichols, N. Lesch, M. Calhoun, D. Claeson, J. Zapata, and J. Woods.


### B. Claims Brought Against Perez and Camarillo

Perez and Camarillo argue that the affidavit submitted in support of the Search Warrant was sufficient to establish probable cause. *See Suarez v. Town of Ogden Dunes, Ind.,* 581 F.3d 591, 596 (7th Cir. 2009)(internal quotations omitted)(quoting in part *Molina ex rel. Molina v. Cooper,* 325 F.3d 963, 968 (7th Cir. 2003))(stating that an affidavit that is filed in support of a search warrant "carries with it a

5

presumption of validity" and "[t]o survive summary judgment the plaintiffs must provide evidence that the officers knowingly or intentionally or with a reckless disregard for the truth made false statements to the judicial officer and show that the false statements were necessary to the judicial officer['s] determination[ ] that probable cause existed").

An affidavit submitted by an officer seeking to obtain a search warrant "will be sufficient to support a probable-cause finding if, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Junkert v. Massey*, 610 F.3d 364, 367 (7th Cir. 2010)(internal quotations omitted)(quoting *United States v. Dismuke*, 593 F.3d 582, 586 (7th Cir. 2010)); *see also United States v. Carmel*, 548 F.3d 571, 575 (7th Cir. 2008)(stating that "'[a] search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime'")(quoting *United States v. Curry*, 538 F.3d 718, 729 (7th Cir. 2008)); *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000)(stating that "[a] search warrant affidavit establishes probable cause when it 'sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime'")(quoting in part *United States v.*

6

*McNeese*, 901 F.2d 585, 592 (7th Cir. 1990)); *Suarez*, 581 F.3d at 595 (stating that "[p]robable cause exists when 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that . . . evidence of a crime will be found'")(quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

### 1. Reliance on Informant's Statements

Plaintiffs argue that Perez and Camarillo improperly relied upon the statements of an informant (Informant) to form the basis for their request for the Search Warrant. In evaluating an informant's statements that are the basis of an affidavit submitted for a search warrant, the court must consider the "totality-of-the-circumstances" and evaluate the "informant's reliability, veracity, and basis of knowledge.'" *Junkert*, 610 F.3d at 367-68 (internal quotations omitted)(quoting in part *Dismuke*, 593 F.3d at 586). Factors to consider when evaluating an informant's statements include: "(1) the degree of police corroboration of the informant's information; (2) whether the information is based on the informant's personal observations; (3) the amount of detail provided by the informant; (4) the interval of time between the events reported by the informant and the warrant application; and (5) whether the informant personally appeared before the warrant-issuing judge." *Id.*

Plaintiffs contend that the Informant did not have a history of reliability.

Plaintiffs also contend that the Informant had smoked crack before speaking to Perez and Camarillo. (SAF Par. 4). However, it is undisputed that the Informant indicated that he had been purchasing crack cocaine from Trexler Calhoun at the Residence for the prior six months and that he had purchased crack cocaine at the Residence on April 14, 2008. (R SF Par. 10-11). Thus, the Informant presented first-hand observations indicating that he had bought illegal drugs at the Residence on the same day that the search warrant was issued for the Residence. Also, it is undisputed that, in order to further verify the Informant's story Perez and Camarillo drove the Informant past the Residence and the Informant confirmed that the Residence was the location where he had purchased the crack. (R SF Par. 12). The undisputed evidence in the record also indicates that, subsequently, the Informant provided a description of Trexler Calhoun, which Perez corroborated by checking a picture of Trexler Calhoun in the police database. (Per. decl. Par. 7). The Informant also was shown a picture of the Residence and confirmed that as the location where he purchased the crack. (R SF Parl. 13); (Per. decl. Par. 7). Defendants have also presented evidence, which Plaintiffs have not genuinely disputed, that Perez checked the criminal history of Trexler Calhoun and discovered that he was a convicted drug felon with the Residence as his listed address. (Per. decl. Par. 7, Ex.1); (R SF Par. 14). Finally, it is undisputed that the Informant accompanied Perez and Camarillo to

8

the hearing for the Search Warrant and the Informant testified under oath. (R SF Par. 18). Thus, the record shows that the Informant's statements were sufficiently reliable and truthful to establish probable cause for the Search Warrant.

### 2. Omission of Information from Affidavit

Plaintiffs also argue that the Search Warrant was fraudulently obtained because, according to Plaintiffs, Perez and Camarillo did not provide the judge issuing the Search Warrant with all relevant information. Plaintiffs fail to adequately identify what relevant information was not conveyed to the judge that issued the Search Warrant. Also, Plaintiffs have failed to point to sufficient evidence to indicate any intentional or reckless omission of material evidence. Thus, Plaintiffs have not pointed to sufficient evidence to show that material evidence was omitted from the affidavit filed in order to obtain the Search Warrant.

### 3. Qualified Immunity

Perez and Camarillo also contend that they are entitled to qualified immunity in regard to the procurement of the Search Warrant. An officer is protected by qualified immunity in obtaining a search warrant unless the plaintiff shows that "'(1) courts have clearly held that a materially similar affidavit previously failed to

9

establish probable cause under facts that were indistinguishable from those presented

in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably

well-trained officer 'would have known that his affidavit failed to establish probable

cause and that he should not have applied for the warrant.'" *Junkert*, 610 F.3d at 369

(quoting *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002)). Based on the

Informant's statements to Perez, Camarillo, and the judge that issued the Search

Warrant, and the corroboration with other evidence, Perez and Camarillo are entitled

to qualified immunity as to the procurement of the Search Warrant. Based on the

above, we grant Defendants' motion for summary judgment on the unreasonable

procurement of search warrant claims (Count III).


II. Unreasonable Seizure Claim (Count I)

Defendants move for summary judgment on the unreasonable seizure claims.

Plaintiffs allege in Count I that they were unreasonably seized by Defendants in

violation of the Fourth Amendment.


A. Unlawful Seizure Claims Brought By Rosia Calhoun

Defendants contend that Rosia Calhoun cannot prevail on a Fourth

Amendment unreasonable seizure claim since she was not present in the Residence at

10

the time of the execution of the Search Warrant. Plaintiffs admit that Rosia Calhoun was away visiting her brother at the time of the execution of the Search Warrant. (R SF Par. 29). Thus, as Plaintiffs admit, Rosia Calhoun does not have standing to bring a claim for an unlawful seizure of her person. (Ans. SJ 7 n.2).

### B. Detaining Plaintiffs During Search

In regard to Plaintiffs that were present in the Residence, Plaintiffs contend that they were improperly detained during the search of the Residence. Plaintiffs contend that their Fourth Amendment rights were violated because they were detained for approximately one hour and were not "the targets of the search warrant. . . ." (Ans. SJ 7). Law enforcement officers that are searching a premises pursuant to a search warrant "have categorical authority to detain any occupant of the subject premises during the search." *United States v. Jennings*, 544 F.3d 815, 818 (7th Cir. 2008); *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005)(stating that "[i]nherent in *Summers'* authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention"). It is undisputed that Plaintiffs were occupants of the Residence when the Search Warrant was executed and Plaintiffs have not shown that a time of approximately one hour was excessive in order to execute the search authorized in the Search Warrant. Therefore, we grant

Defendants' motion for summary judgment on the unreasonable seizure claims (Count I).

III. Unreasonable Search Claims Premised on Knock and Announce Rule

Plaintiffs contend that Defendant Officers engaged in an unconstitutional search of the Residence, arguing that Defendant Officers failed to comply with the knock and announce rule. Under the knock and announce rule "'officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry.'" *Green v. Butler*, 420 F.3d 689, 695 (7th Cir. 2005)(quoting *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997)).

A. Whether Defendants Knocked and Announced Entry

Plaintiffs contend that Defendant Officers never knocked and announced themselves before entering the Residence and Defendant Officers contend that they did knock and announce themselves before entering the Residence. Plaintiffs indicate that they were present in the Residence and were awake and thus whether Defendant Officers did knock and announce themselves before entering the Residence is a genuinely disputed issue of fact.

Defendants also argue that "it is possible that with all the commotion going on

in the house," that Plaintiffs just did not hear the knock and announcement. (Reply 7). While Defendants can make such an argument at trial about what might have happened, at the summary judgment stage such an argument is not sufficient to warrant a finding in their favor on this issue as a matter of law. In addition, at the summary judgment stage the court is required to make all reasonable inferences are made in favor of Plaintiffs, the non-movants. *Anderson*, 477 U.S. at 255. Thus, whether Defendant Officers properly knocked and announced themselves before entering the Residence is a genuinely disputed issue of fact.

### B. Entry by Force

Defendants also contend that Defendant Officers simply pushed open the unlocked door to the Residence in order to enter the Residence and thus there was no entry by force. However, even the opening of an unlocked door in order to enter the Residence would have necessitated the following of the knock and announce rule. *See, e.g., Sabbath v. United States*, 391 U.S. 585, 590 (1968)(stating that "[t]he protection afforded by, and the values inherent in, [the federal knock and announce statute] must be governed by something more than the fortuitous circumstance of an unlocked door")(internal quotations omitted); *Green*, 420 F.3d at 696 n.7 (stating that "[t]he agents did not break the door, but entering without permission constituted

13

a forcible entry for purposes of the knock and announce rule" and indicating that "the phrase 'break open' in the federal knock and announce statute, 18 U.S.C. § 3109" has been construed "to include opening a closed but unlocked door")(internal quotations omitted). Thus, even if Defendants are correct that Defendant Officers merely pushed open an unlocked door to enter the Residence, the knock and announce rule would be applicable.

### C. Exigent Circumstances

We also note that there are certain exceptions to the knock and announce rule when there are exigent circumstances. Three circumstances have been recognized as exigent circumstances under which "an unannounced entry could be reasonable: (1) when there is a threat of physical violence to the officers; (2) when it is necessary to apprehend an escaped prisoner; or (3) when officers have reason to believe that evidence would be destroyed." *Green*, 420 F.3d at 695. Defendants, however, have not argued that exigent circumstances existed in this case or pointed to evidence that would indicate that any such exigent circumstances existed in this case that would have excused the necessity of a knock and announcement.

### D. Qualified Immunity

Defendants also contend that Defendant Officers are entitled to qualified immunity in regard to the unreasonable search claims premised on alleged non-compliance with the knock and announce rule. Governmental actors, such as law enforcement officers, "performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *In re Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010)(quoting in part *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and explaining the significance of *Pearson v. Callahan*, 129 S.Ct. 808 (2009)). To assess whether an officer is shielded from liability by qualified immunity a court must make two inquiries: "(1) has the plaintiff alleged facts that, if proved, would establish a constitutional violation; and (2) would a reasonable officer have known his actions were unconstitutional in light of clearly established law?" *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)(indicating that inquiries do not have to be made in a set sequence).

In the instant action, there has been no showing that a reasonable officer would not have known of the necessity to comply with the knock and announce rule, which is well established in the law. *See, e.g., Jones v. Wilhelm*, 425 F.3d 455, 469

15

(7th Cir. 2005)(finding that officer that violated knock and announce rule was not entitled to qualified immunity). Thus, Defendant Officers have not shown that, based on qualified immunity, they are entitled to summary judgment on the unreasonable search claims premised on alleged non-compliance with the knock and announce rule. Therefore, we deny Defendants' motion for summary judgment on the unlawful search claims that are premised on a violation of the knock and announce rule.

## IV. Unreasonable Search Claims Premised on Alleged Property Theft and Damage

Defendants contend that Plaintiffs cannot prevail on the unlawful search claims in regard to the alleged property damage and theft at the Residence since there is insufficient evidence to show that any of Defendant Officers were personally involved in the alleged misconduct. Defendants also contend that the manner of execution of a search warrant is left to the discretion of law enforcement. In addition, Defendants contend that Plaintiffs have not pointed to sufficient evidence to show the extent of the alleged property theft and damage and that any damage to property was de minimis.

## A. Failure to Connect Specific Defendants to Alleged Misconduct

Defendants contend that Plaintiffs have failed to point to evidence that indicates that any of Defendant Officers specifically engaged in the alleged property theft and damages. Plaintiffs respond to the instant motion by pointing to evidence that they contend connects Camarillo, Defendant D. Claeson (Claeson), and Defendant J. Woods (Woods) to the theft and damage of certain property. (Ans. SJ 9-10). Thus, Plaintiffs fail to even try and connect any Defendants other than Camarillo, Claeson, and Woods to any property damage or theft.

At the summary judgment stage, a plaintiff opposing a defendant's motion for summary judgment cannot rely on mere allegations and instead must put forth sufficient evidence to support the plaintiff's case. Fed. R. Civ. P. 56(e)(2); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)(stating that "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit"). In *Hessel v. O'Hearn*, 977 F.2d 299 (7th Cir. 1992), the Seventh Circuit addressed a situation where the plaintiffs claimed that police officers stole cash and personal items from the plaintiffs during searches of plaintiffs' businesses and the plaintiffs were unable to point to evidence indicating which officer or officers of the group present at the searches stole the cash and items. *Id.* at 304-05. The Court held that the plaintiff could not rely on a "principle of collective punishment as the sole possible basis of liability . . . ." *Id.* at 305 (stating

that "[p]roximity to a wrongdoer does not authorize punishment"). Similarly, in the instant action, Plaintiffs cannot hold Defendant Officers collectively liable for the alleged conduct of any one Defendant or for the conduct of any other officer that was at the Residence during the time in question. Other than as to Camarillo, Claeson, and Woods, Plaintiffs allege only generally in their complaint that Defendant Officers engaged in the theft and damage of property at the Residence. (Compl. Par. 36). Plaintiffs were allowed to conduct discovery in this case concerning all Defendants. Plaintiffs cannot proceed to trial based on pure speculation that police officers, including Defendant Officers that were present in the Residence, participated in the alleged theft and damaged property. Therefore, we grant Defendants' motion for summary judgment on the unreasonable search claims that are premised on the alleged theft and damage to property in the Residence, which are brought against Defendant Officers other than Camarillo, Claeson, and Woods.

### B. Alleged Theft/Damage Claims Brought Against Camarillo and Claeson

In regard to the theft and damage claims brought against Camarillo and Claeson, Plaintiffs contend that there is evidence that ties them to the alleged theft and damage of property in the Residence. In regard to Camarillo, Plaintiffs have pointed to evidence specifically connecting Camarillo to alleged property damage

and theft in the bedroom of James Calhoun (Bedroom). James Calhoun testified at his deposition that after he was handcuffed, one of Defendant Officers asked him if he had a weapon and James Calhoun indicated he had a weapon, but it was locked up in his bedroom. (JC dep. 30). According to James Calhoun, he then offered the keys to the room and one of Defendant Officers told him not to worry about it and that they would get in the room. (JC dep. 31). James Calhoun further testified that some of Defendant Officers went upstairs and he heard a "boom" upstairs. (JC dep. 32). We note that Perez testified at his deposition that he was downstairs and did not hear any officer force open a door on the second floor. (Per. dep. 31). It is undisputed that Camarillo searched the Bedroom and recovered a shotgun. (R SAF Par. 16). It is also undisputed that after Camarillo had started searching the Bedroom, Claeson joined Camarillo in the search of the room. (R SAF Par. 16). Plaintiffs contend a watch, a jeweled cross, and old coins were missing from the Dresser drawers after the search by Camarillo and Claeson. (SAF Par. 15). Thus, while we are not making any finding as to the weight of such evidence, there is evidence that indicates that Camarillo entered the locked Bedroom and that subsequently, Camarillo and Claeson were alone together in the Bedroom and searched the room, and Plaintiffs have alleged that certain items are missing from the Bedroom.

Plaintiffs have also claimed that there was property damage in the Bedroom

area that included a hole in the Bedroom door, damage to a dresser, and damage to a Masonic Fez and Masonic crown. (SAF Par. 15). Plaintiffs have pointed to evidence that indicates that Camarillo, in order to enter the locked Bedroom, damaged the door to the Bedroom. There is also evidence that indicates that Camarillo and Claeson were alone together searching the Bedroom is circumstantial evidence that ties them to the alleged property damage in the Bedroom. While we are not making any findings as to the weight of any such evidence, Plaintiffs have pointed to sufficient evidence to tie Camarillo and Claeson to the alleged property damage in the Bedroom. Whether Camarillo and Claeson engaged in the theft or damage of property, is genuinely disputed issue and can only be resolved by the trier of fact.

### C. Alleged Theft/Damage Claim Brought Against Woods

In regard to Woods, Plaintiffs contend that the evidence shows that Woods was the only Defendant that acknowledges entering the closet in the Residence from which a diamond necklace was allegedly stolen, and the only Defendant that acknowledges entering the basement where clothing was allegedly thrown on the floor and was damaged and a fan was damaged. However, there is undisputed evidence indicating that many officers took part in the approximately one hour search

20

of the Residence. (Per. decl., Ex. 4). There is also evidence that indicates that some police officers that are not even named as defendants in this case also entered areas of the Residence during an initial search to make sure the Residence was secured. (Per. decl., Ex. 4). Simply because Woods admitted to having entered the basement or closet is not sufficient evidence to connect him to any alleged wrongdoing. Unlike in regard to Camarillo and Claeson, there is no evidence that indicates that Woods entered locked rooms and was thus the first person to enter rooms and there is no evidence to indicate that Woods was alone when entering the areas where items were allegedly stolen or damaged. Therefore, we grant Defendants' motion for summary judgment on the unreasonable search claim based on the alleged theft and damage of property in the Residence brought against Woods.


### D. Manner of Execution of Warrant

Defendants contend that they cannot be held liable for any damage to property in the Residence because under the law, the execution of a search warrant is left to the discretion of law enforcement. The Government points out that in *Dalia v. United States*, 441 U.S. 238 (1979) the Supreme Court indicates that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant. . . ." *Id.* at 257.

However, the Court in *Dalia* went on to add that such discretion is "subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.'" *Id.* The Court in *Dalia* also noted that "officers executing search warrants on occasion must damage property in order to perform their duty." *Id.* However, a search, even one made pursuant to the execution of a search warrant, must be reasonable or it violates the Fourth Amendment. *Id.* (stating that "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness"); *Green*, 420 F.3d at 694-95 (stating that "[t]he touchstone of Fourth Amendment inquiry is reasonableness," and "[t]he reasonableness requirement, and the totality of the circumstances inquiry, extends to the manner in which a search is conducted").

In the instant action, Defendants have contended that they did not damage any property and have in a cursory manner argued that any damage would have been the result of a reasonable search for narcotics. The court cannot in the abstract disregard the alleged damage to property in the Bedroom based on Defendants' discretion to execute a search warrant. Defendant Officers have claimed that they did not damage any property and claim not to have even seen any property damaged by a search. (SF Par. 38). Plaintiffs, on the other hand have presented evidence that property was damaged in the Bedroom. Whether Camarillo and Claeson damaged any property in

22

the Bedroom and, if so, whether such property damage was caused by Camarillo and Claeson are genuinely disputed issues. Likewise, if Camarillo and Claeson damaged any property in the Bedroom, whether such damage was reasonably necessary in order to execute the Search Warrant is a genuinely disputed issue.

### E. De Minimis Damages

Defendants also argue that any damage that was caused to property in the Residence was de minimis damage. Defendants have cited no cases in which damage similar to the damage alleged in this case has been found to be de minimis and insufficient to support a valid Section 1983 claim. As indicated above, whether any damage to the property in the Residence was part of a reasonable search is an issue to be resolved by the trier of fact. We also note that Defendants have simply denied any knowledge of the alleged property damage and have not provided the court with sufficient evidence to properly assess whether the damage should be classified as de minimis damages. There has been no showing by Defendants that the alleged damage would be insufficient as a matter of law to support a Section 1983 claim.

F. Evidence of Damages

Defendants also contend that there is insufficient evidence to support Plaintiffs claims as to the alleged damages and theft. Defendants argue that Plaintiffs have only presented conclusory allegations as to the alleged property damages at the Residence. (Mem. SJ 12). However, Plaintiffs have pointed to evidence such as photographs of property damage at the Residence. Defendants criticize the photographs, arguing that there is not sufficient information concerning when they were taken any by whom and that the photographs are "worthless." (Reply 8). While Defendants can challenge the evidence at trial, whether there are bases for the admission of the Photographs cannot be assessed on the record now before the court. Defendants also contend that Plaintiffs have not produced invoices to show replacement costs for the alleged property damage. However, there is no requirement that Plaintiffs prove such damages in that particular manner. Defendants also contend that according to their calculations the record indicates that all money claimed by Plaintiffs to have been taken from the Residence was returned to Plaintiffs. This is a moot issue, however, since no money was allegedly taken from the Bedroom and the property located in the Bedroom are the sole remaining basis for claims based on alleged theft and damage of property.

### G. Qualified Immunity

Defendants also contend that Defendant Officers are entitled to qualified immunity in regard to the unreasonable search claims premised on the alleged theft and damage to property in the Residence. *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)(explaining qualified immunity analysis). As indicated above, it is well established in the law that searches, even searches made pursuant to a search warrant must meet the reasonableness standard or they violate the Fourth Amendment. Also, as indicated above, Defendants have put forth no evidence to show the reasonableness of any theft or damage of property in the Residence. Thus, Defendants have not shown that Camarillo and Claeson are entitled to qualified immunity in regard to the alleged property damage in the Bedroom. Therefore, we grant Defendants' motion for summary judgment on the unreasonable search claims premised on the alleged theft and damage to property that are brought against Perez, Woods, and Defendants J. McNichols, N. Lesch, M. Calhoun, and J. Zapata. We deny Defendants' motion for summary judgment on the unreasonable search claims premised on the alleged theft and damage to property that are brought against Camarillo and Claeson.

## V. Procedural Due Process Claims

Defendants contend to the extent that Plaintiffs seek to bring procedural due process claims premised on the alleged theft and damage to property in the Residence such claims are barred since there are available alternative state court remedy forecloses Section 1983 liability for the alleged procedural due process violations. For a procedural due process claim which "is based on the random and unauthorized conduct of a state actor and state law remedies are available, a plaintiff must either avail himself of the state law remedy or show that the available remedy is inadequate." *Leavell v. Illinois Dept. of Natural Resources*, 600 F.3d 798, 802 (7th Cir. 2010); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)(stating that the intentional deprivation of property without authorization, "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available"); *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007)(indicating that "post-deprivation process sometimes may provide adequate procedural protection for the deprivation of property rights" such as "(1) where quick action is required on the part of the state and (2) where providing any meaningful pre-deprivation process is impracticable"). Defendants contend that Plaintiffs have a state law conversion cause of action as a remedy for the alleged theft of the property in the Residence. Plaintiffs have not

26

presented any arguments in opposition to Defendants' position and have not argued that they intend to bring a procedural due process claim. Therefore, based on the above, we grant Defendants' motion for summary judgment on any procedural due process claims.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment on the unreasonable procurement of a search warrant claims (Count III), the unreasonable seizure claims (Count II), and the procedural due process claims. We deny Defendants' motion for summary judgment on the unlawful search claims premised on a violation of the knock and announce rule. We grant Defendants' motion for summary judgment on the unlawful search claims premised on the alleged theft and damage to property that are brought against Perez, Woods, and Defendants J. McNichols, N. Lesch, M. Calhoun, and J. Zapata. We deny Defendants' motion for summary judgment on the unlawful search claims premised on the alleged theft and damage to property in the Residence that are brought against Camarillo and Claeson.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 28, 2010